**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Tocara Investments, et al., | 2:15-cv-00787-JAD-PAL |
| Plaintiffs | **Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment** |
| v. | |
| Jeh Johnson, Secretary, Department of Homeland Security, et al., | [ECF Nos. 35, 41] |
| Defendants | |

Mampre Minci is a Canadian national who was denied an investor visa by United States Citizenship and Immigration Services (USCIS). He filed this case seeking review of the agency's denial, and both parties now move for summary judgment based on the administrative record. I review USCIS's decision for abuse of discretion, and based on this record, there are multiple, independent reasons to affirm.

Investment visas come with a number of perks. So, Congress has imposed several requirements that an applicant must meet before USCIS can hand them out. One of these requirements is that Minci needed to prove that he invested substantial capital into an American business. But more importantly, he had to prove that the money he invested was (1) earned from a lawful enterprise and not some criminal endeavor and (2) actually his own money (and not fronted by another foreign investor). Minci was also required to maintain his status in America during the agency's review process.

USCIS reasonably determined that Minci failed on all these points—any one of which would be enough on its own to reject his application. First, USCIS reasonably determined that Minci failed to trace his investment funds to any source (much less a lawful one). Minci told USCIS that he invested money into a salon here in Las Vegas and that he earned his investment capital from gambling winnings. But his tax returns showed that he put most of his winnings back into the machines. And his other evidence on this point was equally unconvincing—it was either vague,

related to the wrong time periods, or simply irrelevant.

USCIS also reasonably determined that Minci failed to establish that he even invested his own money. Minci never provided USCIS with enough evidence for the agency to determine when and how Minci used his own personal funds (whether earned from gambling or another source) to invest into the salon. His bank statements and other evidence painted an incomplete picture. And finally, Minci abandoned his application at one point, which was another independent reason to deny his request.

All in all, Minci made a haphazard effort to prove that he qualified for the visa he wanted. There were several reasons justifying USCIS's decision to deny his application, any one of which would be enough for me to affirm.[1] I therefore grant summary judgment in favor of USCIS and affirm its decision.

## Background

**A.   E-2 investment visas**

The Immigration and Nationality Act allows foreign investors to apply for a special visa under 8 U.S.C. § 1101(a)(15)(E)(ii) (the "E-2 visa"). E-2 visas are coveted because they allow investors to reside in the United States for longer than other visas; even better, they are indefinitely renewable.[2]

These visas are not easy to get. E-2 visas are only handed out to investors who inject "substantial" foreign capital into a U.S. business venture.[3] The applicant must show not only that he controls this investment capital, but that it is his own "personal capital" (and the applicant is not a front for someone else funding the endeavor).[4] The applicant must also show that he earned this

---

[1] I find these motions suitable for disposition without oral argument. Nev. L.R. 78-1.

[2] 8 C.F.R. § 214.2(e)(19)(I); *Kato v. Cty. of Westchester*, 927 F. Supp. 714, 716 (S.D.N.Y. 1996).

[3] 8 C.F.R. § 214.2(e)(2).

[4] *Id.*; *see also Nice v. Turnage*, 752 F.2d 431, 432 (9th Cir. 1985) (upholding the USCIS's requirement that investment funds come from the applicant's personal capital and are not a "front" for some other source).

money from some lawful enterprise and not any sort of criminal activity.[5]

**B.    Minci's application for an E-2 visa and USCIS's denial**

Tocara owns and operates EnVogue, a Las Vegas-based salon, and Minci is Tocara's sole shareholder. In 2014, Tocara applied with USCIS to have Minci's B-2 visitor visa converted into an E-2 investor visa. Minci's application stated that he had invested well over one hundred thousand dollars into EnVogue, and that he therefore was a foreign investor entitled to an E-2 visa. Minci told USCIS that he was a professional gambler and that the source of his investment came from his winnings.[6] His application explained that he had started EnVogue with his ex-wife and that, after their divorce, he had taken over operating the salon on his own. He detailed how he had invested a significant sum in various expenses related to running EnVogue, including: rent, advertising, furniture, inventory, telephone, and supplies.[7]

Just a couple weeks later, USCIS sent Minci a letter requesting more evidence to substantiate that the money he invested into EnVogue came from a lawful source.[8] The USCIS's letter detailed the sorts of evidence he should provide, including tax returns and copies of any wire transfers or checks that would allow USCIS to trace the investment funds to a lawful source.[9] Minci replied to USCIS's request, first by stating that he was going through a divorce and that his wife would not give him all the records, and second by providing a business valuation and other documents detailing EnVogue's and Tocara's assets and solvency (although it is not clear why the company's assets mattered at this point).[10]

A few months later, USCIS sent Minci another letter, once again asking for more evidence

---

[5] *Id.* (requiring invested funds to "not [have] been obtained, directly or indirectly, through criminal activity").

[6] ECF No. 39-2 at 27, 150.

[7] *Id.* at 28.

[8] ECF No. 39-7 at 22.

[9] *Id.*

[10] *Id.* at 26.

and explanation about the source of the funds he used to invest in EnVogue.[11] Minci mostly responded by rehashing the same explanation and evidence: he earned the investment funds by gambling, and his tax returns and other documents showed that.[12] He also noted that he invested in the business through his then ex-wife's credit cards, but that he was still unable to provide those records because she would not give them to him.[13] Shortly after, the USCIS issued a decision on Minci's application, denying it, primarily because Minci did not meet his burden to trace the funds he invested into EnVogue back to a lawful source.[14]

Six months later, USCIS reopened Minci's case, giving him yet another chance to prove that his investment funds came from a lawful source. The USCIS also noted that there was insufficient evidence showing that Minci had actually invested any funds himself personally, and that much of his evidence related to money he invested into operating the business, not a capital investment into the initial enterprise.[15] Minci responded, providing additional tax and other documents showing that he did indeed earn substantial money gambling.

Finally, in March of 2016, the USCIS issued a final decision denying Minci's E-2 visa application.[16] The agency identified three problems. First, Minci still had not proven that his investment funds came from a lawful source.[17] Although he said that he earned this money gambling, Minci's tax returns showed that once his losses were accounted for, he earned little, if anything, from that enterprise.[18] There were also inconsistencies between what Minci had originally

---

[11] *Id.* at 68.

[12] *Id.* at 906.

[13] *Id.*

[14] ECF No. 39-2 at 3–7.

[15] ECF No. 39-7 at 101.

[16] *Id.* at 90.

[17] *Id.*

[18] *Id.*

told the USCIS and what his documentation stated. For example, Minci's tax statements indicated that he lost more at certain casinos than he stated in his communications to the USCIS.[19] The USCIS also noted that much of Minci's evidence pertained to his income and investments after EnVogue was operating profitably, not the relevant time period, which is when EnVogue was getting off the ground.[20]

The next problem was that Minci had not shown that he truly risked his investment because he had not provided any documentation showing that he irrevocably committed these funds to EnVogue.[21] In effect, Minci appeared to be reinvesting EnVogue's own money as operating costs, not putting his own personal capital at risk. The final problem was that Minci appeared to have abandoned his application by going back to Canada before the review process was complete.[22]

**Discussion**

**A.    I review USCIS's decision for abuse of discretion.**

Although the parties move for summary judgment, my review of an agency's action under the APA is limited to the administrative record.[23] Whether to grant an applicant E-2 status is a matter committed to "the discretion of USCIS."[24] My role is simply "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."[25]

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] 5 U.S.C. § 706(2); *see also Citizens to Pres. Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

[24] *Patel v. Minnix*, 663 F.2d 1042, 1043 (11th Cir. 1981).

[25] *Occidental Eng'g Co. v. Immigration & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985).

I can reverse only if the applicant shows that the agency abused its discretion,[26] which means either (1) it applied the wrong law or (2) its factual findings were not supported.[27]  The burden of proof for establishing E-2 visa eligibility rests on the applicant, and he must prove his eligibility by a preponderance of the evidence.[28]  If an agency denies an application on multiple grounds, the burden is on the applicant to show that the agency abused its discretion on all grounds of denial.[29]

At the outset, Minci argues that I should ignore the normal abuse-of-discretion standard because USCIS made a fundamental legal error that poisoned all of its findings: it applied the wrong burden of proof.  Minci points out that the agency never explicitly mentioned in its decision what burden of proof applied to his application.  And he contends that he provided enough evidence to easily meet the applicable preponderance-of-the-evidence standard.  Thus, Minci concludes, the agency must have applied the wrong standard.

I disagree.  An agency is not required to state the applicable burden of proof in its decision, and courts presume that an agency is aware of the law and applies the appropriate standard (unless there is a reason to think otherwise).[30]  There is no indication that USCIS applied the wrong standard here.  USCIS is well versed in the preponderance-of-the-evidence standard; I cannot assume the agency applied a different one without any evidence suggesting that is the case.  What Minci is really asking for is a district court to consider his immigration application on the merits and in the first

---

[26] *See Lauvik v. I.N.S.,* 910 F.2d 658, 659 (9th Cir. 1990); *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981).

[27] *See Systronics Corp. v. Immigration & Naturalization Serv.*, 153 F. Supp. 2d 7, 15 (D.D.C. 2001).

[28] *See* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa . . . the burden of proof shall be upon such person to establish that he is eligible to receive such a visa.").  *See also Kim v. District Director*, 586 F.2d 713, 716 (9th Cir. 1978) ("The proof must be unambiguous and doubts should be resolved against the investor claimant.") (citation omitted); *Han v. Hendricks*, 949 F.2d 399 (9th Cir. 1991).

[29] *Spencer Enters., Inc. v. United States*, 229 F. Supp. 2d 1025, 1037 (E.D. Cal 2001), *aff'd*. 345 F.3d 683 (9th Cir. 2003).

[30] *See Lockwood v. Comm'r of Social Sec. Admin.*, 616 F.3d 1068, 1072 n.3 (9th Cir. 2010).

instance, which I cannot do.[31]  I therefore review USCIS's decision for an abuse of discretion.

**B.    USCIS did not abuse its discretion by denying Minci's E-2 visa.**

There are three reasons USCIS did not abuse its discretion in denying Minci's application for an E-2 visa, and any of them is enough on its own to uphold the agency's decision: (1) Minci failed to prove that he earned his investment funds in a lawful endeavor, (2) he failed to prove that he risked his own money, and (3) he abandoned his application by going back to Canada.

**1.    USCIS did not abuse its discretion in finding that Minci failed to adequately trace his investment funds to a lawful source.**

USCIS reasonably determined that Minci failed to prove that the money he used to invest in EnVogue came from a lawful endeavor.  8 C.F.R. § 214.2 required Minci to prove that the assets he invested in EnVogue were not obtained "directly or indirectly . . . through criminal activity."[32]  USCIS's determination that Minci failed on this point is more than adequately supported by the record.

First, Minci told USCIS that he earned the money he invested into EnVogue from gambling winnings, and USCIS reasonably determined that Minci failed to prove this fact.  After all, Minci's tax returns indicated that he gambled away most of his "winnings."  Minci believes that the USCIS erred by inquiring into his "net " gambling profits.  But USCIS was asking a perfectly reasonable question: how could Minci be spending money on EnVogue that, at the same time, he told the IRS he

---

[31] Notably, Minci's briefing is primarily about whether he met his initial burden, not whether USCIS abused its discretion.  He thus has not properly briefed the controlling legal question in this case.  That is reason enough to rule against him.  But even if I construe his arguments as if he made them under an abuse-of-discretion standard, as I explain below, they still fail.

[32] *See Nice*, 752 F.2d at 432 (affirming USCIS's requirement that an applicant adequately prove the source of invested funds); *In re Soffici*, 22 I. & N. Dec. 158, 164-165 (Assoc. Comm. 1998) (finding that when "[t]he source of funds . . . has . . . not been adequately documented," it cannot be determined "whether the funds have lawfully been obtained"); *In re Izummi*, 22 I. & N. Dec. 169, 195 (Assoc. Comm. 1998) (citation omitted) (finding that because "petitioner ha[d] not documented the path of funds, such as by wire-transfer records, the petitioner . . . failed to meet his burden of establishing that the initial [investment] . . . were his own funds").  Courts have recognized in similar contexts that this tracing requirement is critical to implementing Congress's directive that the funds are not from a suspect origin.  *See Spencer*, 229 F. Supp.2d at 1040.

gave back to the casinos?  Perhaps Minci had other sources of income that allowed him to cover his losses and still invest in EnVogue—but that is precisely the sort of evidence that USCIS asked for and never received.[33]  Even if I were sitting as the initial fact finder, I could not say that Minci has shown that it is more likely than not that his investment capital came from gambling winnings.

Second, assuming that Minci had shown that he had gambling winnings to spend, he never traced those funds to his investments in EnVogue.  He told USCIS that he could not provide some of the relevant records, such as his credit card receipts, because his ex-wife wouldn't hand them over.  But a party cannot meet his burden of proof by complaining that he cannot procure the evidence.  And the other documents he provided do not show that his gambling winnings were, in fact, the same funds he used to invest in EnVogue.  As the agency explained to him multiple times, Minci did not provide evidence tracing his winnings into his accounts and out to EnVogue (and the agency was not required to simply take his word for it).

Finally, there were other reasons that Minci's evidence was untrustworthy.  The USCIS noted inconsistencies between what Minci told the agency and what was on Minci's documentation.  Much of Minci's evidence was also irrelevant because it related to money spent long after EnVogue was running; it thus did not show that Minci was risking his own personal capital.  For example, Minci's evidence did not differentiate between gambling winnings prior to March 2012, when EnVogue began operations, and after the salon began operating.

At bottom, any one of these reasons is enough to justify USCIS's finding that Minci did not meet his burden to prove that the money he invested in EnVogue came from a lawful source.  This is reason enough to affirm the agency's decision in its entirety.

---

[33] Minci notes that although he may have lost his winnings by the end of the year, he may have had enough cash in hand at certain times so that he could invest in EnVogue.  That might be the case, but it does not change the fact that his losses undermine his evidentiary showing that his winnings were the true source of his investment capital.  And in any event, Minci needed to show USCIS that his investment funds were not "directly or *indirectly*" traced to criminal activity.  That means he needed to explain how he was able to cover hundreds of thousands of dollars of gambling losses so that he could free up his winnings to invest into EnVogue.  He failed to do so.

**2.    USCIS did not abuse its discretion in finding that Minci failed to show that he put his own money at risk.**

Minci also had the burden to prove that he in fact put his own personal capital "at risk in the commercial sense."[34]  "Such investment capital must be the investor's unsecured personal business capital or capital secured by personal assets."[35]  The Ninth Circuit has clarified that USCIS can properly require an applicant to prove that the source of invested funds was actually his own personal capital and not a front for some other investor.[36]

USCIS reasonably found that Minci failed on this prong.  Minci relied on vague evidence, such as third-party evaluations, to show that he used his personal capital to fund EnVogue.  The invoices he provided USCIS did not make clear which assets came from Minci and which came from the salon's own profits.  Similarly, Minci never provided evidence linking up which capital was used to fund the credit cards used to pay for many of EnVogue's expenses.  And other evidence that Minci cited to USCIS on this point, such as EnVogue's corporate tax returns, was not even relevant to whether he committed his own personal assets.

Ultimately, there is a dearth of evidence showing that Minci ever irrevocably committed his own personal assets to the venture.  This is another reason to affirm the agency's decision.

**3.    USCIS did not abuse its discretion in determining that Minci abandoned his E-2 application by leaving the country.**

Finally, USCIS reasonably determined that Minci abandoned his application by leaving the United States.  The regulations governing E-2 visas required that Minci remain in the United States and maintain his immigration status here.[37]  But he failed to do that, heading back to Canada in the middle of the process.[38]

---

[34] 8 C.F.R. § 214.2(e)(2).

[35] *Id.*

[36] *Nice*, 752 F.2d at 432.

[37] 8 C.F.R. § 248.1(a).

[38] ECF No. 39-7 at 95.

Minci does not dispute this point on the merits. Instead, he argues that USCIS is judicially estopped from asserting the abandonment rule against him. Minci points to that fact that the USCIS sent him a letter telling him to go back to Canada, and USCIS is therefore "seeking to punish [Minci] for doing what it told him to do."[39]

The problem is that Minci does not argue that the government is *equitably* estopped (probably because that would require him to show misconduct, which he cannot do).[40] Instead, he relies on the doctrine of *judicial* estoppel, which requires that he prove that USCIS has changed "its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process."[41] This doctrine is about protecting the "integrity" of the court process.[42] I consider "whether [a] party has succeeded in persuading a court to accept that party's earlier position" because otherwise, "a party's later inconsistent position introduces no risk of inconsistent court determinations . . . and thus no threat to judicial integrity."[43]

USCIS has never changed positions in a judicial proceeding, much less convinced a court to adopt a contrary position. Minci is upset that USCIS told *him* something different than what it is telling a court now; that is equitable estoppel, not judicial estoppel. I am sympathetic to the fact that a government agency sent Minci confusing signals, but the law only permits him relief if he can prove affirmative misconduct, and he has not even tried to make that showing. This is another independent reason to affirm USCIS's decision.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that **Minci's motion for summary judgment [ECF No. 35] is DENIED.**

---

[39] ECF No. 49 at 7.

[40] *See R.L. Inv. Ltd. Partners v. I.N.S.*, 86 F. Supp. 2d 1014, 1025 (D. Haw. 2000), *aff'd*, 273 F.3d 874 (9th Cir. 2001) (citation omitted).

[41] *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

[42] *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782–83 (9th Cir. 2001)

[43] *Id.*

IT FURTHER IS ORDERED that USCIS's **cross motion for summary judgment [ECF No. 41] is GRANTED**.  I affirm the USCIS's administrative denial of Minci's E-2 visa application and direct the Clerk of Court to close this case.

Dated this 14t$^h$ day of March, 2017.

_____
Jennifer A. Dorsey
United States District Judge